THOMPSON, Presiding Judge,
concurring in the result, dissenting from the rationale, and dissenting from the instructions on remand.
In reversing the trial court’s judgment, the main opinion relies on the principle that a party cannot be said to have reasonably relied on a fraudulent oral representation if that representation is contradicted by a writing. Because I do not agree that that principle is applicable to the present case, I respectfully dissent from the rationale of the main opinion as well as from the main opinion’s instructions to the trial court on remand. For separate reasons, however, I agree with the main opinion that the trial court’s judgment is due to be reversed.
Cordell Sudduth testified at trial that, on several separate occasions, Mark Duck-er represented to him that the mileage stated on the odometer of the vehicle the Sudduths purchased was accurate. Mr. Sudduth was then confronted with the odometer statement, which, as the main opinion recites, read as follows:
“I_state that the odometer now reads 67,647 miles and to the best of my knowledge that it reflects the actual mileage of the vehicle described below, unless one of the following statements is checked.
“ X (1) I hereby certify that to the best of my knowledge the odometer reading reflects the amount of mileage in excess of its mechanical limits.
“ (2) I hereby certify that the odometer reading is not the actual mileage. Warning — odometer discrepancy.”
(Bold typeface in original.)
As the main opinion points out, ‘“a plaintiff who is capable of reading documents, but who does not read them or investigate facts that should provoke inquiry, has not reasonably relied upon a defendant’s oral representations that contradict the written terms of the documents.’ ” 54 So.3d at 867 (quoting AmerUS Life Ins. Co. v. Smith, 5 So.3d 1200, 1208 (Ala.2008)). Mr. Sudduth testified at trial that he read the odometer statement and that he understood the reference in subpart (1) to “mechanical limits” to indicate the dealership’s view that there “might be something wrong with” the vehicle and that the vehicle might not be operating within its mechanical limits. The trial judge, himself, indicated that the odometer statement was worded in a confusing manner. The confusion caused by the wording of the statement may be attributable, at least to some extent, to the fact that it is not clear to what the word “its” refers in the sub-part the dealership checked. This confusion is heightened by the fact that, when understood in the manner apparently intended by the dealership, the odometer statement indicates that the vehicle had been driven 1,067,647 miles, a statement that is obviously and patently false.
Under the circumstances of this case, I conclude that a reasonable person could misunderstand the odometer statement as presented, and, as it was actually misunderstood by the Sudduths, it did not necessarily contradict the oral representations that Ducker had made to the Sudduths *369 regarding the correctness of the odometer reading. Thus, in my view, the trial court did not err when it implicitly concluded that the Sudduths’ reliance on Ducker’s false oral representations was reasonable.
The dealership also argues on appeal that the Sudduths failed to offer any proof of their damages. I agree. In a case involving facts similar to those at issue in the present case, our supreme court discussed the proper measure of damages for fraud:
“Wilhoite contends that the misrepresentation occurred when Franklin advertised and offered for sale a 1982 Can Am Corvette, when, in fact, Franklin knew that it was a 1972 model. Based upon Franklin’s inducement, Wilhoite purchased the 1972 Corvette, believing that it was a 1982 model. Wilhoite alleged that he suffered damages because ‘the car he received was of less value’ and ‘he was caused to incur expenses’ to cure the defects in the car.
“The general measure of damages in a case of this type is the difference between what the property is actually worth and what it would have been worth if the property had been as represented. Martin v. Honeycutt, 341 So.2d 171 (Ala.Civ.App.1976). The purpose of damages in a case such as this is to place the defrauded person in the position he would occupy if the representations had been true. Morris v. Westbay Auto Imports, Inc., 512 So.2d 1373 (Ala.1987). All naturally resulting damages, including expenses incurred as a result of the fraud, are recoverable, but they must be actual damages proved at trial. P & S Business Machines, Inc. v. Olympia U.S.A., Inc., 707 F.2d 1321 (11th Cir.1983). The jury’s assessment of damages cannot be based on speculation or conjecture. [McLendon] Pools, Inc. v. Bush, 414 So.2d 92 (Ala.Civ.App.1982).
“Applying these rules to this case, and despite the rule that a jury verdict will be reviewed with all favorable presumptions, Jawad v. Granade, 497 So.2d 471 (Ala.1986), we find that there was no evidence to support the amount of damages awarded. Wilhoite testified that he traded a 1978 Jeep and $3,500 for the used Corvette. He testified further that he incurred expenses in fixing the defects in the car. He failed, however, to submit testimony concerning the amount of those expenses. Furthermore, Wil-hoite completely failed to establish the actual value of the Corvette or what it would have been worth had it been as represented.”
Wilhoite v. Franklin, 570 So.2d 1236, 1237 (Ala.Civ.App.1990).
In the present case, the Sudduths provided no evidence of the value of the vehicle as it was represented to be and no evidence of its value as it was. Thus, there was no evidence to support the trial court’s award of compensatory damages.
The Sudduths argue that the above-stated measure of damages applies only when the aggrieved party keeps the goods fraudulently sold to it, and they argue that they attempted to return the vehicle to the dealership. Although it may be true that whether a party keeps or returns goods fraudulently sold to it might affect the appropriate measure of damages, see Gable v. Boles, 718 So.2d 68, 72 (Ala.Civ.App.1998), the fact of the matter is that the Sudduths kept the vehicle and, instead of filing an action to rescind their contract with the dealership and to obtain restitution of the purchase price, continued to use the vehicle until it was destroyed in an accident. As a result, the general measure of damages for fraud applies to their cause of action against the dealership.
*370 The Sudduths also argue that the trial court’s award can be justified on the basis of the mental anguish they suffered as a result of the dealership’s fraud. However, it is well settled “that in tort cases damages for mental anguish have to be linked to actual physical injury or ‘zone of danger,’ .... ” Birmingham Coal & Coke Co. v. Johnson, 10 So.3d 993, 999 (Ala.2008). The Sudduths have not demonstrated that they were physically injured or -within a zone of danger created by the dealership’s fraud.
Despite my view that the Sudduths failed to support their claim for compensatory damages, I do not believe that they are necessarily precluded from seeking damages in some form. For example, nominal damages are available to a plaintiff when “there is evidence of a breach of a legal duty and ... evidence from which actual damage can be inferred....” LaCoste v. SCI Alabama Funeral Servs., Inc., 689 So.2d 76, 81 (Ala.Civ.App.1996). Furthermore, “[a]n award of nominal damages will support an award [of] punitive damages.” Iliff v. Norwood Hodges Motor Co., 680 So.2d 248, 245 (Ala.Civ.App.1993). Because the trial court awarded compensatory damages to the Sudduths, it had no need to consider, and apparently did not consider, whether the Sudduths were entitled to nominal damages. As a result, I would reverse the trial court’s judgment and remand the cause to the trial court to reconsider whether and to what extent the Sudduths are entitled to an award of damages, taking into consideration the fact that the Sudduths failed to prove that they were entitled to compensatory damages.